Roy B. Thompson, OSB 82501 (*pro hac vice*)
e-mail: **roythompson@comcast.net**
**THOMPSON BOGRÁN, PC**
15938 SW Quarry Rd., Suite B-6
Lake Oswego, OR 97035
Telephone:  503-245-6600
Cellphone:  503-381-9945
Facsimile:  503-244-8399

Mark S. Hubert, OSB 98256 (*pro hac vice*)
e-mail: **markhubert@pacifier.com**
**MARK S. HUBERT, PC**
2300 SW First Ave., Suite 101
Portland, OR 97201
Telephone:  503-234-7711
Facsimile:  502-224-0092

Attorneys for Defendant Vigilant Video, Inc. and The City of Port Arthur, Texas

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| JOHN B. ADRAIN,<br><br>    Plaintiff,<br><br>vs.<br><br>VIGILANT VIDEO INC., and THE CITY OF PORT ARTHUR, TEXAS,<br><br>    Defendants. | Case No. 2:10-CV-00173-TJW-CE<br><br>**JURY** |

**DEFENDANTS VIGILANT VIDEO, INC'S AND THE CITY OF PORT ARTHUR'S INVALIDATION CONTENTIONS (Pursuant to PLR 3-3)**

Defendant's Vigilant Video Inc. and the City of Port Arthur ("Vigilant" and "the City") hereby serves, pursuant to Patent Rule ("P.R.") 3-3, their Invalidity Contentions upon Plaintiff John

B. Adrain ("Adrain"), for the claims of U.S. Patent No. 5,831,669 ("the '669 patent") that Adrain has asserted against Vigilant and the City - specifically claims 1-3 and 6-10 of the '669 patent.

Vigilant and the City make these invalidity contentions and related disclosures based on information obtained to date and available to them. These invalidity contentions do not reflect Vigilant and the City's claim construction definitions and should not be construed as evidence of their position on claim construction. The invalidity contentions herein are preliminary in that they reflect Vigilant and the City's invalidity contentions as of this early date in the present action. Also, the descriptions and characterizations of the prior art are preliminary. Nothing herein should be viewed as an admission or final statement. Moreover, Vigilant and the City note that their investigation and review of prior art and other matters is ongoing and, accordingly, Vigilant and the City reserve the right to modify, amend, or otherwise supplement their contentions and disclosures as additional information becomes available during the course of this lawsuit.

The specific obviousness combinations of references and motivations to combine provided below with respect to 35 USC §103 are merely exemplary and are not intended to be exhaustive. Numerous additional reasons to combine and obviousness combinations of the references identified below are possible and inherent, and Vigilant and the City reserve the right to use any such additional motivations and combinations in this litigation. *To wit*: the Request for *Ex Parte* Reexamination of US Patent 5,831,669 (*Ex Parte* Reexamination Control No. 90/011,233) filed September 14, 2010, which is incorporated herein by reference and appended as EXHIBIT A hereto.

**I. P.R. 3-3(a): "The identity of each item of prior art that allegedly anticipates each asserted claim or renders it obvious."**

Vigilant and The City identify in this section all of the prior art that they have uncovered to

date but, depending on claim construction, discovery, or other developments in the case, Vigilant and the City reserve the right to chart additional prior art if necessary or as circumstances warrant. Vigilant and the City incorporates by reference any prior art identified in the *Ex Parte* Reexamination of US Patent 5,831,669 (Control No. 90/011,233) filed September 14, 2010 as well as any statements made by the USPTO in the 6/20/2011 USPTO office action.

## U.S. Patents: (EXHIBIT B)

| Patent No. | Date of Issue | Patent No. | Date of Issue |
|---|---|---|---|
| 3,590,151 | June 29, 1971 | 5,034,739 | July 23, 1991 |
| 3,825,676 | July 23, 1974 | 5,066,950 | November 19, 1991 |
| 4,064,501 | December 20, 1997 | 5,082,365 | January 21, 1992 |
| 4,185,298 | January 22, 1980 | 5,083,200 | January 21, 1992 |
| 4,337,482 | June 29, 1982 | 5,088,827 | February 18, 1992 |
| 4,356,903 | November 2, 1982 | 5,091,727 | February 25, 1992 |
| 4,368,979 | January 18, 1983 | 5,091,780 | February 25, 1992 |
| 4,396,903 | August 2, 1983 | 5,095,196 | March 10, 1992 |
| 4,514,068 | April 30, 1985 | 5,097,328 | March 17, 1992 |
| 4,547,897 | October 15, 1995 | 5,124,920 | June 23, 1992 |
| 4,567,609 | March 28, 1983 | 5,175,617 | December 29, 1992 |
| 4,603,390 | July 29, 1986 | 5,206,643 | April 27, 1993 |
| 4,611,347 | September 9, 1986 | 5,225,665 | July 6, 1993 |
| 4,704,694 | November 3, 1987 | 5,245,675 | September 14, 1993 |
| 4,712,103 | December 8, 1987 | 5,263,118 | November 16, 1993 |
| 4,720,785 | January 19, 1988 | 5,283,644 | February 1, 1994 |
| 4,728,195 | March 1, 1988 | 5,293,428 | March 8, 1994 |
| 4,737,847 | April 12, 1988 | 5,333,011 | July 26, 1994 |

| | | | |
|---|---|---|---|
| 4,774,571 | September 27, 1988 | 5,339,000 | August 16, 1994 |
| 4,812,118 | April 11, 1989 | 5,343,237 | August 30, 1994 |
| 4,817,166 | March 28, 1989 | 5,367,439 | November 22, 1994 |
| 4,866,438 | September 12, 1989 | 5,371,690 | December 6, 1994 |
| 4,876,540 | October 24, 1989 | 5,381,155 | January 10, 1995 |
| 4,878,248 | October 31, 1989 | 5,414,624 | May 9, 1995 |
| 4,908,500 | March 13, 1990 | 5,414,626 | May 9, 1995 |
| 4,947,353 | August 7, 1990 | 5,422,473 | June 6, 1995 |
| 4,958,064 | September 18, 1990 | 5,425,108 | June 13, 1995 |
| 4,972,359 | November 20, 1990 | 5,426,509 | June 20, 1995 |
| 4,984,170 | January 8, 1991 | 5,469,512 | November 21, 1995 |
| 4,990,757 | February 5, 1991 | 5,497,430 | March 5, 1996 |
| 4,991,205 | February 5, 1991 | 5,512,942 | April 30, 1996 |
| 5,003,520 | March 26, 1991 | 5,515,042 | May 7, 1996 |
| 5,557,254 | September 17, 1996 | 5,568,406 | October 26, 1996 |
| 5,666,157 | September 9, 1997 | 5,651,075 | July 22, 1997 |
| 5,877,804 | March 2, 1999 | 5,880,775 | March 9, 1999 |
| | | 5,896,167 | April 20, 1999 |

**Non-U.S. Patents and Patent Publications**: (EXHIBIT C)

| Patent or Publication Number | Country | Publication Date |
|---|---|---|
| DE 4401993 A1 | Germany | July 27, 1995 |
| DE 4407528 A1 | Germany | September 21, 1995 |
| EP 0193320 | Europe | September 3, 1986 |
| EP 0565014 A1 | Europe | October 13, 1993 |
| EP 0582989 A2 | Europe | February 16, 1994 |
| EP 0367725 A2 | Europe | October 30, 1989 |

| | | |
|---|---|---|
| EP 0784838 B1 | Europe | October 6, 1994 |
| FR 2226904 | France | November 15, 1974 |
| FR 2671888 | France | July 24, 1992 |
| GB 2265243 | United Kingdom | September 22, 1993 |
| GB 2273596 | United Kingdom | June 22, 1994 |
| GB 2284290 | United Kingdom | May 31, 1995 |
| GB 2279478 | United Kingdom | January 4, 1996 |
| JP 382494 | Japan | August 22, 1991 |
| JP 2110800 | Japan | March 23, 1990 |
| JP 5 344503 | Japan | December 24, 1993 |
| JP 6 105310 | Japan | April 15, 1994 |
| JP 6 243386 | Japan | September 2, 1994 |
| JP 8 65553 | Japan | March 8, 1996 |
| WO 91/17525 | PCT | November 14, 1991 |
| WO 92/09973 | PCT | June 11, 1992 |

**Non-Patent Publications:** (EXHIBIT D)

| Title | Publication Date, & Author & Publisher |
|---|---|
| *"Automated License Plate Reading"* | September 1989<br>Larry C. Howington |
| *"'Magic Eye' May Spot Road Toll Cheats"* | May 17, 1994  Ian Morton<br>Evening Standard (London) |
| *"Automatic License Plate Reader"* | at least as early as 1994<br>Alphatech Imaging Systems |
| *"An Efficient Implementation of the Hough Transform for Detecting Vehicle License Plates Using DSP'S"* | 1995   Varsha Karmet, et al.<br>IEEE |
| *"Analysis of the Mask Filters Used in the "Talon" Licence Plate Recognition System"* | September 8, 1995    C. J. Lopez-Cacicedo<br>Racal Research Limited |

| | |
|---|---|
| *"Application of Neural Network Techniques to Automatic Licence Plate Recognition"* | May 16, 1995  D. W. Tindal   European Convention on Security and Detection, IEEE |
| *"Automatic Number Plate Reader for Transport Application"* | 1993   David J. Robertson<br>IEEE |
| *"Background to ANPR Recognition Methods"* | 1993   Racal Research Limited |
| *"Car License Plate Recognition with Neural Networks and Fuzzy Logic"* | at least as early as June 1996<br>J. A.G. Niijhuis, et al. |
| *"Computer Spy Keeps Eye Out for Terror Cars"* | September 12, 1993<br>Robert Matthews   The Sunday Telegraph |
| *"Design of Real Time Vehicle Identification Systems"* | 1994   Young Sung Soh<br>IEEE |
| *"Development of Vehicle-License Number Recognition System Using Real-Time Image Processing and Its Application to Travel-Time Measurement"* | 1991   Kenji Kanayama, et al.<br>IEEE |
| *"Automatic Number Plate Recognition"* | Dec. 5, 1994   Defence Research Agency DRA, Ministry of Defence |
| *"Evaluation of Video-Recognition Equipment for Number -Plate Matching"* | at least as early as June 1996<br>P. G. Williams, et al. |
| *"Hardware Programmers Manual"* | April 6, 1995  N. Buxton, et al.<br>Racal Research Limited |
| *"Infra-Red Cameras Can Trap Speeding Drivers at Night"* | May 29, 1994<br>John Harlow   Times Newspapers Limited |
| *"Intelligent Scene Monitoring: Technical Aspects and Practical Experience"* | 1995<br>Brian Stubbington, et al.   IEEE |
| *"Evaluation and Trials of an Automatic License Plate Recognition System Employing Neural Network Techniques"* | April 17-20, 1994<br>David W. Tindall, et al.<br>IVHS America Conference |
| *"Number Plate Recognition by Hierarchical Neural Networks"* | 1993   Luisa De Vena   International Joint Conference on Neural Networks |
| *"License Plate Recognition Technology for Toll Violation Enforcement"* | Peter Davies, et al.<br>Castle Rock Consultants |
| *"Neural Network Designed for Road Speed Detection"* | May 30, 1994<br>M2 Communs. |

| | |
|---|---|
| *"Optical Recognition of Motor Vehicle License Plates"* | Nov. 1995<br>Paolo Comelli, et al.   IEEE |
| *"P6633 - Working Paper TALON Enhancements - A Strategy"* | December 1, 1995<br>G. F. Stott, et al.  Racal Research Limited |
| *"Racal Radio Launch a New Vehicle Number Plate Camera System"* | May 11, 1994<br>Computergram |
| *"Reading Car License Plates by the Use of Artificial Neural Networks"* | at least as early as 1996<br>Michael Raus, et al.   IEEE |
| *"Talon Racal Radio Automatic License Plate Recognition System"* | at least as early as 1995<br>Racal Research |
| *"Talon V2 Performance in Varying Scenarios"* | May 22, 1996  C. P. Vermaat, et al.<br>Racal Research Limited |
| *"Neural Network License Plate Recognition"* | Summer 1995 Nigel Beats<br>Traffic Technology International |
| *"Vehicle Recognition: Putting an Imaging Technology on the Road"* | Feb. 1995<br>Lee J. Nelson |
| *"Your Number May be Up"* | May 13, 1994<br>Chris Partridge          The Times |
| *"Application of Image Processing Technique in Identification and Discrimination of Final Product"* | August 1987<br>S. Maschino |
| *"Gray Scale Image Processing Technology* | February 5, 1987      M. Takatoo, et al. |
| *"The Parking Lot Management System with Recognizing a License Plate Number Automatically"* | November 1995<br>T. Imai |
| *"The System Architecture in License Plate Number Recognition and the High-Speed License Plate Extraction by Taguchi's Method"* | June 1989<br>K. Kanayama |

///////

///////

///////

## Other Prior Art Under 35 U.S.C. §§ 102(a), 102(b)

| Item | Date Sold or Offered for Sale | Verifying Party |
|---|---|---|
| *Automatic Number Plate Recogniser* | at least as early as Dec. 5, 1994 | John Rogers; members of the Defense Research Agency; |
| *Number-Plate Recogniser Unit/SVDD* | at least as early as February 1995 | Computer Recognition Systems, Ltd; P.G. Williams, |
| *Talon LPRS* | at least as early as 1994 | Racal Research Limited; CJ Lopez-Cacicedo; DW Tindall; |
| *Argus Automatic License Plate Reader* | at least as early as 1990 | Alphatech Inc., Imaging Systems; Lee Nelson |
| *Fastoll* | at least as early as June 1996 | Castle Rock Consultants; Peter Davies, Neil Emmott |
| *VIA* | at least as early as February 1995 | Non-Cooperative Target Recognition Ltd.; Lee Nelson |
| *Perceptics LPR* | at least as early as February 1995 | Perceptics Corporation; Lee Nelson |
| *ARTEMIS* | at least as early as February 1995 | Siemens Plessey Controls; Lee Nelson |
| *SAFE-T-CAM* | at least as early as February 1995 | Telestra Applied Technologies; Lee Nelson |
| *Number Plate Reading System (NRS)* | at least as early as March 1995 | Computer Recognition Systems Limited |

II. **P.R. 3-3(b): "Whether each item of prior art anticipates each asserted claim or renders it obvious. If a combination of items of prior art makes a claim obvious, each such combination, and the motivation to combine such items, must be identified."**

### Anticipation:

The following prior art references anticipate one or more asserted claims of the '669 patent.

The "Talon" automatic license plate scanner anticipates claims 1-3 and 6-10.

U.S. Patent No. 3,590,151 anticipates claims 1-3, 6, and 9.

U.S. Patent No. 3,825,676 anticipates claims 1,2, 6, 8 and 9.

U.S. Patent No. 4,396,903 anticipates claims 1-3, 6, and 8-10.

U.S. Patent No. 4,603,390 anticipates claims 1-3, 6, and 8-10.

U.S. Patent No. 4,611,347 anticipates claims 1-3, 6, and 8-10.

U.S. Patent No. 5,097,328 anticipates claims 1-3, 6, and 8-10.

U.S. Patent No. 5,343,237 anticipates claims 1-3, 6, and 8-10.

U.S. Patent No. 5,381,155 anticipates claims 1-3, 6, and 8-10.

U.S. Patent No. 5,469,512 anticipates claims 1-3, 6, and 8-10.

U.S. Patent No. 5,557,254 anticipates claims 1-3 and 6-8.

U.S. Patent No. 5,568,406 anticipates claims 1-3, 6, and 8-10.

U.S. Patent No. 5,651,075 anticipates claims 1-3, 6, and 8-10.

U.S. Patent No. 5,666,157 anticipates claims 1-3 and 6-10.

U.S. Patent No. 5,877,804 anticipates claims 1-3, 6, and 8-10.

U.S. Patent No. 5,880,775 anticipates claims 1-3, 6, and 8-10.

U.S. Patent No. 5,896,167 anticipates claims 1 and 8-10.

U.S. Patent No. 4,908,500 anticipates claim 1.

GB 2265243 anticipates claims 1, 8, and 10.

GB 2284290 anticipates claims 1-3, 6, and 8.

WO 91/17525 anticipates claims 1-3, 6, 8, and 9.

Vigilant and The City believe that the prior art references above directly anticipate the subject

claims, particularly in view of the broad claim constructions for the '669 patent advanced by Adrain in his Infringement Contentions. In the event circumstances occur that warrant a change in Vigilant and The City's position (e.g., the Court's claim construction order, additional discovery and investigation, submission of amended infringement contentions by Adrain, expert opinions and discovery, etc.) and such prior art references do not directly anticipate certain claims but instead only render such claims obvious, either alone or in combination with other prior art references, Vigilant and The City reserve the right to amend these contentions to further specify appropriate combinations and motivations to combine under § 103, as the circumstances described above dictate or other contingencies so justify.

Vigilant and the City point out that regarding the invalidation of claims 1-3 and 6-10 of the '669 patent by the prior art Racal Talon ALPR system, an element by element comparison is illustrated in Chart 1. This is not necessary. The Racal Talon ALPR system has all of the elements found in any one of the '669 patent claims, based on assertions in the plaintiff Adrain's pleadings in Case No. 2:08 - CV-423 of the United States District Court For the Eastern District of Texas, that the Talon ALPR system does meet the element by element equivalence test. Defendants are free to accept this statement, unchallenged, as an admission of equivalence or infringement by Plaintiff. Vigilant and the City would assert that the Talon ALPR system is prior art under 35 USC §102 and/or §103, and that based on a proof of a prior art date more than one year before the July 9, 1996 effective date of the '669 patent, Vigilant and the City would move to invalidate the asserted claims of the '669 patent as anticipated under *Peters v. Active Mfg.*, 21 F. 319 (W.D.Ohio 1884) (affirmed and quoted in 129 U.S. 530 (1889)). Defendants shall prove that the Talon device (essentially unchanged from today's model) was for sale in the U.S. more than one year before the '669 filing.

**Obviousness:**

The following prior art references, either alone, in combination with the knowledge of one skilled in the art, and/or in combination with other prior art references, render obvious one or more asserted claims of the '669 patent as identified below and in the attached claim charts. The specific combinations of prior art references for each claim or claim limitation and the various motivations to combine such references are set forth in detail in the claim charts for the primary reference of each combination listed below and also found in the nature of the problem being solved, the teachings of the prior art, the knowledge of persons of ordinary skill in the art, and the fact that the prior art is directed to optical surveillance, pattern recognition, and/or license plate recognition technology generally.

U.S. Patent No. 3,590,151 in combination with one or more of the prior art references as identified in the attached claim chart 2 renders claims 1-3 and 6-10 obvious.

U.S. Patent No. 4,396,903 in combination with one or more of the prior art references as identified in the attached claim chart 3 renders claims 1-3 and 6-10 obvious.

U.S. Patent No. 4,603,390 in combination with one or more of the prior art references as identified in the attached claim chart 4 renders claims 1-3 and 6-10 obvious.

U.S. Patent No. 4,611,347 in combination with one or more of the prior art references as identified in the attached claim chart 5 renders claims 1-3 and 6-10 obvious.

U.S. Patent No. 5,097,328 in combination with one or more of the prior art references as identified in the attached claim chart 6 renders claim 7 obvious.

U.S. Patent No. 5,343,237 in combination with one or more of the prior art references as identified in the attached claim chart 7 renders claim 7 obvious.

U.S. Patent No. 5,381,155 in combination with one or more of the prior art references as identified in the attached claim chart 8 renders claim 7 obvious.

U.S. Patent No. 5,469,512 in combination with one or more of the prior art references as identified in the attached claim chart 9 renders claims 1-3 and 6-10 obvious.

U.S. Patent No. 5,557,254 in combination with one or more of the prior art references as identified in the attached claim chart 10 renders claims 9 and 10 obvious.

U.S. Patent No. 5,568,406 in combination with one or more of the prior art references as identified in the attached claim chart 11 renders claim 7 obvious.

U.S. Patent No. 5,651,075 in combination with one or more of the prior art references as identified in the attached claim chart 12 renders claims 1-3 and 6-10 obvious.

U.S. Patent No. 5,877,804 in combination with one or more of the prior art references as identified in the attached claim chart 14 renders claims 1 and 7 obvious.

U.S. Patent No. 5,880,775 in combination with one or more of the prior art references as identified in the attached claim chart 15 renders claim 7 obvious.

U.S. Patent No. 4,908,500 in combination with one or more of the prior art references as identified in the attached claim chart 21 renders claims 7, 8 and 10 obvious.

GB 2265243 in combination with one or more of the prior art references as identified in the attached claim chart 17 renders claims 1-3 and 6-10 obvious.

GB 2284290 in combination with one or more of the prior art references as identified in the attached claim chart 17 renders claims 1-3 and 6-10 obvious.

WO 91/17525 in combination with one or more of the prior art references as identified in the attached claim chart 18 renders claims 1-3 and 6-10 obvious.

**III. P.R. 3-3(c): "A chart identifying where specifically in each alleged item of prior art each element of each asserted claim is found, including for each element that such party contends is governed by 35 U.S.C. § 112(6), the identify of the structure(s), act(s), or materials(s) in each item of prior art that performs the claimed function"**

The attached charts are based, in part or in whole, on Adrain's asserted theories of infringement in this case, as identified in Adrain's Infringement Contentions. As a general matter, all portions of each reference are relied upon to support the disclosure of each patent claim limitation, as all portions provide general support. Representative descriptions and supporting citations are nevertheless provided, but do not necessarily represent every instance where a particular claim limitation may be disclosed or taught by the prior art reference. Vigilant and the City reserves the right to rely on additional, or different, portions of the prior art references, as well as to rely on the prior art references for additional claims than may be cited in the charts provided. A list of references that are individually charted is below. Each of these references either anticipates one or more of the asserted claims of the patent or renders one or more of the asserted claims obvious alone or in combination with the knowledge of one of ordinary skill in the art and/or one or more other prior art references, as identified above and as set forth in the charts.

| EXHIBIT E Claim Chart No. | Cited Reference |
|---|---|
| 1 | The "Talon" automatic license plate scanner . |
| 2 | U.S. Patent No. 3,590,151 |
| 3 | U.S. Patent No. 3,825,676 |
| 4 | U.S. Patent No. 4,396,903 |
| 5 | U.S. Patent No. 4,603,390 |

| | |
|---|---|
| 6 | U.S. Patent No. 4,611,347 |
| 7 | U.S. Patent No. 5,097,328 |
| 8 | U.S. Patent No. 5,343,237 |
| 9 | U.S. Patent No. 5,381,155 |
| 10 | U.S. Patent No. 5,469,512 |
| 11 | U.S. Patent No. 5,557,254 |
| 12 | U.S. Patent No. 5,568,406 |
| 13 | U.S. Patent No. 5,651,075 |
| 14 | U.S. Patent No. 5,666,157 |
| 15 | U.S. Patent No. 5,877,804 |
| 16 | U.S. Patent No. 5,880,775 |
| 17 | U.S. Patent No. 5,896,167 |
| 18 | GB 2265243 |
| 19 | GB 2284290 |
| 20 | WO 91/17525 |
| 21 | U.S. Patent No. 4,908,500 |
| 22 | Various Prior Art Systems |

In addition to the prior art references identified above for which individual claim charts are attached, the attached claim charts also include citations and further references to additional prior art references that teach or describe various features of the claims. These additional references identified in one or more of the charts are: U.S. Patent Nos. 3,825,676; 4,704,694; 4,817,166; 4,876,540; 5,263,118; 5,293,428; 5,333,011; 5,339,000; 5,371,690; 5,414,624; 5,414,626; 5,425,108; 5,426,509; 5,515,042; 5,638,302; 5,805,209; 5,809,161; 5,877,969; 5,938,717; and 6,052,068; and European Patent No. EP 0784838. Where cited, the relevant column and line number (or other citation) to the portion of such reference that teaches or describes the relevant subject matter is

provided.

Moreover, as discussed above, there are numerous other prior art references listed in the tables in Section I herein for which claim charts are not provided at this time apart from inclusion of certain of those references in obviousness combinations identified in the attached claim charts. Vigilant and the City believe the uncharted references are further illustrative of the state of the art and/or the level of skill in the art at the respective times of the alleged invention and filing date of the '669 patent and these references have substantially similar disclosures as other prior art for which a chart has been provided. Vigilant and the City reserve the right to revise these invalidity contentions to more specifically rely on these references to prove the invalidity of the asserted claims of the '669 patent in a manner consistent with the Federal Rules of Civil Procedure and the Court's rules.

**IV.     P.R. 3-3(d): "Any grounds of invalidity based on indefiniteness under 35 U.S.C. § 112(2) or enablement or written description under 35 U.S.C. § 112(1) of any of the asserted claims."**

Pursuant to P.R. 3-3(d), Vigilant and the City submit grounds of invalidity based on 35 U.S.C. § 112, paragraphs 1 and 2. These contentions shall not be construed as an admission that any claim construction advanced by Vigilant and the City in this case is any way flawed or erroneous. Further, these contentions shall not be construed as an admission of or acquiescence to Adrain's purported construction of the claim language or of other positions advanced by Adrain during the course of this litigation. Vigilant and the City further reiterate that discovery is ongoing in this litigation. As such, Vigilant and the City reserve their right to modify or augment the invalidity contentions in this section as new information becomes available or as the Court's claim construction

order or other mandate so warrants.

Claims 1-3 and 6-10 are invalid under 35 U.S.C. § 112(1) for failure to satisfy the written description and enablement requirements. One skilled in the art could not make and use the alleged invention of claims 1-3 and 6-10 by reading the '669 patent specification because the specification fails to explain to any reader how to make and use a system with the capability to read characters from images of license plates and compare those characters to other images of license plates. For example, the '669 patent does not describe how one skilled in the art would make and/or use any hardware and/or software that can read alphanumeric characters of a license plate from an image. In pertinent part the '669 patent reads:

*Referring to FIG. 2, the camera 12 can be mounted on a mobile support, such as a vehicle 30. The space 14 and objects 32 being monitored change according to movement of the vehicle 30. For example, the camera can be mounted on a police car and programmed to monitor license plate numbers. The reference memory stores license numbers for stolen cars. Analysis is limited to consistently sized characters within a specified boundary, that is the rectangular shape of the license plate. When the object 32 meets the analysis criteria of a license plate, the number is compared to the numbers in the reference memory. When the comparison finds a match, an appropriate alarm indicates discovery of a stolen car to officers in the police car. Information about the car and possible occupants can be displayed as well.* Indeed, there is no explanation of any algorithm or other hardware structure that one could use to recognize a license plate from an image of a larger area or object and to then extract the relevant data, such as an alphanumeric text string, from the portion of the image that includes a license plate.

One skilled in the art reading the '669 patent specification would have no idea how to make

and/or use an interpreter, comparator, or system capable of reading license plates. The '669 patent's entire disclosure in this regard is limited to col. 3, lines 1-3 and col. 4, line 60 - col. 5, line 6. One skilled in the art could not read this and make and use the invention that Adrain asserts is covered by claims 1-3 and 6-10.

Claims 1-3 and 6-10 are also invalid under 35 U.S.C. § 112(1) because the phrase "wherein the interpreter and comparator cooperate to select recognizable portions of image data among unrecognized portions of image data in the space being monitored" in claim 1 is unsupported by the patent specification and not enabled. The '669 patent application was rejected twice and had to undergo a continued prosecution application (CPA) before it was allowed. In this prosecution the patent attorney traveled to the USPTO and met with the patent examiner and his primary examiner (supervisor) on January 20, 1998. At this meeting they resolved the reasons for non allowance and shortly thereafter the patent attorney amended his claims. The file wrapper reflects very little of the Examiner's record of this meeting and what transpired other than they discussed changes for claims 1 and 15 but did not reach agreement. The reason for allowance is not stated in the CPA but is clearly because of the amendment to incorporate the following functional description to the comparator element in claims 1 and 15 (the final claim 11.) (This statement is supported by the 6/20/2011 USPTO Office Action in the Reexamination.

*"wherein the interpreter and comparator cooperate to select recognizable portions of image data among unrecognized portions of image data in the space being monitored, the selected image portions being compared to the image data in the reference memory"*

There is no explanation in the '669 patent specification as to how the interpreter and comparator "cooperate" to perform the recited function, and one skilled in the art would not be able

to build an interpreter and comparator to cooperate as claimed based on the disclosure in the patent specification. Moreover, the claims are invalid under 35 U.S.C. § 112(2) because this phrase is indefinite, as to what is meant by the claimed "cooperat[ion]," or stated otherwise, how the interpreter and comparator "cooperate" to carry out the recited function is ambiguous.

Claims 1-3 and 6-10 also are invalid under 35 U.S.C. § 112(2) as indefinite because the terms "interpreter," "comparator," and "output interface" are means-plus-function claim elements, and the '669 patent specification does not adequately disclose and link specific structures to these means-plus-function claim terms. These terms themselves do not connote sufficient structure and the remainder of claim 1 (and its dependent claims) does not recite any specific structure associated with these terms. The only possible "structure" identified in the specification for these terms is a microcomputer and associated software (col. 3, lines 49-52). However, under governing Federal Circuit authority, a general purpose computer or software is inadequate structure under 35 USC § 112(6) and a means-plus-function claim element for which the only disclosed structure is a general purpose computer is invalid under 35 USC § 112(2) if the specification fails to disclose an algorithm for performing the claimed function. The '669 patent specification fails to disclose any algorithms for performing the recited functions of the interpreter, comparator, and output interface, and thus the claims are invalid as indefinite.

Claim 8 is invalid under 35 USC § 112(2) because the claim limitation "the record memory" lacks an antecedent basis in claim 8 or claim 1, from which claim 8 depends. To the extent Adrain asserts "record memory" is the "reference memory" in claim 1, claim 8 is invalid under 35 USC § 112(2) as being indefinite as it is unclear from claim 8 that "record memory" is the same as "reference memory" and the specification uses each of those terms to refer to a separate memory.

///////

## V. Supporting Exhibits

The Exhibits referenced above are being provided to Plaintiff's counsel in electronic format.

Dated: July 15, 2011

**THOMPSON BOGRÁN, PC**

/s/ Roy B. Thompson
Roy B. Thompson, OSB 82501 (*pro hac vice*)
15938 SW Quarry Rd., Suite B-6
Lake Oswego, OR 97035
Telephone:   503-245-6600
Cellphone:   503-381-9945
Facsimile:   503-244-8399
E-mail:      roythompson@comcast.net

Mark S. Hubert, OSB 98256 (*pro hac vice*)
**e-mail: markhubert@pacifier.com**
**MARK S. HUBERT, PC**
2300 SW 1st Ave, #101
Portland, OR 97214
Telephone:   503-234-7711
Facsimile:   502-224-0092
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing **Invalidity Contentions of Vigilant Video Inc. and The City of Port Arthur** on the following:

| | |
|---|---|
| John T. Polasek | tpolasek@pqelaw.com |
| Jeffrey Scott David | jdavid@pqelaw.com |
| C. Dale Quisenberry | dquisenberry@pqelaw.com |
| **POLASEK QUISENBERRY & ERRINGTON, LLP** | |
| 6750 West Loop South, Suite 920 | |
| Bellaire TX  77401 | |
| Telephone:  832-778-6000 | |
| Facsimile:  832-778-6010 | |
| Of Attorneys for Plaintiff | |
| | |
| Otis W. Carroll | nancy@icklaw.com |
| **IRELAND, CARROLL & KELLY, P.C.** | |
| 6101 S Broadway, Suite 500 | |
| PO Box 7879 | |
| Tyler, TX  75711 | |
| Telephone:  903-561-1600 | |
| Facsimile:  903-581-1071 | |
| Of Attorneys for Plaintiff | |

electronically via the Court's CM/ECF system.

DATED: July 15, 2011

**THOMPSON BOGRÁN, P.C.**

/s/ Roy B. Thompson
Roy B. Thompson, OSB 82501 (*pro hac vice*)
Of Attorneys for Defendants
15938 Quarry Road, Suite B-6
Lake Oswego, OR 97035
Telephone:  503-245-6600
Facsimile:  503-244-8399
E-mail:  roythompson@comcast.net