IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| JOHN B. ADRAIN, | § § | |
| *Plaintiff*, | § § | Case No. 2:10-cv-173 |
| vs. | § § | **JURY TRIAL DEMANDED** |
| VIGILANT VIDEO, INC. and THE CITY OF PORT ARTHUR, TEXAS, | § § § § | |
| *Defendants*. | § | |

# PLAINTIFF JOHN B. ADRAIN'S REPLY CLAIM CONSTRUCTION BRIEF PURSUANT TO P.R. 4-5(c)

John T. Polasek
C. Dale Quisenberry
Jeffrey S. David
S. Calvin Capshaw
Elizabeth L. DeRieux

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................................1

II. DEFENDANTS' PRODUCTS .............................................................................................1

III. ARGUMENT........................................................................................................................2

    A. Image Data ................................................................................................................2

    B. Camera ......................................................................................................................3

    C. Reference Memory....................................................................................................4

    D. Reference Image Data...............................................................................................5

    E. Interpreter..................................................................................................................6

    F. Comparator ...............................................................................................................6

    G. Monitoring System....................................................................................................7

    H. Movably Mounted.....................................................................................................8

    I. Output Interface ........................................................................................................9

IV. CONCLUSION...................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Bose Corp. v. JBL, Inc.*,
    274 F.3d 1354 (Fed. Cir. 2001) ................................................................................................ 9

*Curtis-Wright Flow Control Corp. v. Valen, Inc.*,
    438 F.3d 1374 (Fed. Cir. 2006) ............................................................................................ 3, 4

*Gen. Foods Corp. v. Studiengesellschaft Kohle mbH*,
    972 F.2d 1272 (Fed. Cir. 1992) ................................................................................................ 7

*Philips v. AWH Corporation*,
    415 F.3d 1303 (Fed. Cir. 2005) ................................................................................................ 7

*Sandisk Corp. v. Memorex Prods.*,
    415 F.3d 1278 (Fed. Cir. 2005) ................................................................................................ 2

**Rules**

MPEP § 2173.05(e) ........................................................................................................................ 9

I.     INTRODUCTION

Defendants' brief misapplies the law of claim construction and contains a number of inaccurate statements. The purpose of this reply is to respond to the major points raised in defendants' brief.

II.     DEFENDANTS' PRODUCTS

The defendants have used their Responsive Claim Construction Brief to provide what appears to be a preview of their non-infringement position. (Doc. 77 at 5-8). The defendants state, without any evidentiary support, that there "is no comparison of any images" and that "the images from the camera are output in analog form and the further processing devices receive an analog image input." *Id.* It is not clear what these "further processing devices" include, what function they may have, or the relevance of this information.

The defendants' non-infringement position appears to rely on the claim construction that "image data" can <u>only</u> consist of an actual image, such as a picture. This incorrect construction permeates each of Defendants' constructions. Defendants' position is litigation-induced, as the specification, file history and extrinsic evidence here all indicate that such construction is inappropriate. "Image data" should be construed as "data that is input to the interpreter, including data representative of a license plate number, or other types of data."

Other than defendants' self-serving and conclusory statement that comparisons are not performed on "images" in its system, the defendants acknowledge that every limitation of the '669 patent is met by their system. *Id*.

### III. ARGUMENT

#### A. Image Data

Defendants' proposed construction for this term improperly excludes the preferred embodiments of the '669 patent. Specifically, Defendants' construction would exclude the embodiment described in Figure 2 (A0003) and at column 4, line 60 through column 5, line 6, in which a camera is mounted on a vehicle, such as a police car and monitors license plate numbers. Yet, Defendants, despite acknowledging that "there are other types of data other than visual images described in the patent," ignore that these other types of data can be input into the interpreter.

Indeed, Defendants acknowledge that the patent specifically states that "[d]ata other than visual images can be analyzed." (Response Brief, Doc. 77, at 17). However, Defendants' construction that would require that only visual images from a camera can be analyzed precludes the analysis of data other than visual images. Defendants' construction excludes a preferred embodiment. It is black letter law that a construction that excludes a preferred embodiment is rarely, if ever, correct. *Sandisk Corp. v. Memorex Prods.*, 415 F.3d 1278, 1285 (Fed. Cir. 2005). Here, Defendants' construction is incorrect.

Further, Defendants' argument that Adrain is "focusing on what he could have possibly claimed" and that "[i]f Plaintiff intended to include all the embodiments in his specification he should have done so" are red herrings. (Doc. 77, at 17). The Court should construe the '669 patent's claims to cover the embodiments in its specification. Adrain's claims *do* cover the embodiments described in the specification, such as the embodiment in which "the camera can be mounted on a police car and programmed to monitor license plate numbers." (A0005, 4:60-5:6). Defendants are merely trying to construe the claims such that these embodiments <u>are excluded</u>. Again, this is improper and the Court should reject such a construction. *Sandisk*, 415 F.3d 1285.

Moreover, Defendants have cherry-picked language from the specification in attempt to bolster their incorrect construction. Defendants state that the "specification and prosecution history clearly show that his license plate number embodiment compares the images of the license plate not optical characterization of the license plate numbers." (Doc. 77 at 17). Defendants ignore the language in column 5 of the '669 patent that specifically states that "the *number* is compared to the numbers in the reference memory." (A0006, 5:2-3). This refutes Defendants statements that "the images of the license number are what is being compared to each other, not optically recognized alphanumeric character strings." (Doc. 77 at 18). There is no restriction in the claims as to the origination of the license plate numbers in the reference memory.

Defendants have crafted a strained construction for "image data" that excludes multiple preferred embodiments. This is improper and should therefore be rejected.

### B. Camera

The term "camera" needs no construction. The Defendants' construction is an example of the defendants engaging in the age-old ploy of reading additional limitations – such as the word "digital" – into the claim language, attempting to avoid a finding of infringement.

The task before the Court is to construe the claims of the '669 patent, *as issued*. The term "digital" appears nowhere in the claims of the '669 patent, as issued. Yet Defendants merely seek to include this language based on a recent amendment made to the claims of the '669 patent by Adrain's patent prosecution counsel in its reexamination proceedings. However, the Patent and Trademark Office ("PTO") has not yet allowed that amendment. In other words, Defendants seek to import limitations from a claim in reexamination to the issued claim. This would violate the doctrine of claim differentiation, under which different claims of a patent are presumed to have different scope. *Curtis-Wright Flow Control Corp. v. Valen, Inc.*, 438 F.3d 1374, 1380 (Fed. Cir. 2006)

(noting that "claim differentiation takes on relevance in the context of a claim construction that would render additional, or different, language in another independent claim superfluous.") Here, Defendants seek to include a "digital" limitation in the construction of "camera" in claim 1 of the '669 patent. However, this construction ignores the fact that Adrain amended claim 1 of the '669 patent in the reexamination proceeding to include the word "digital" before camera. If the word "digital" in the amendment in the reexamination proceeding is to have any non-redundant meaning, then "camera" in the originally-issued form of claim 1 *cannot* be construed with a requirement that the camera capture digital images. *Id.* In other words, because Adrain amended claim 1 in the reexamination proceeding to include the word digital, the original form of claim 1 could not have included such a limitation, per the doctrine of claim differentiation. *Id.*

Because defendants are improperly attempting to incorporate additional litigation-induced limitations into the phrase "camera," defendants' construction should be rejected.

### C. Reference Memory

The defendants assert that there "is no additional source of 'reference image' data" in the '669 patent, other than the camera. (Doc. 77 at 21). Nothing in the '669 patent indicates, however, that the reference image data must come from the camera. In fact, the specification states that the reference memory can receive data at least from the interpreter, as well: "[a] reference memory 20 receives data from the interpreter 16 according to storage criteria." (A0005, 3:33-35). This plainly answers Defendants' rhetorical question "Where are the 'reference image data' coming from if not the camera?" (Doc. 77, 21). Moreover, the specification specifies that the "reference memory can be divided into sections for storing different types of data." (A0005, 3:61-62). The "different types of data" that can be stored in the reference memory are not limited to data from the camera.

The defendants are improperly attempting to add additional limitations to this claim term. The Court should reject their construction. The Court should adopt Adrain's construction for this term, which is "hardware for the storage and retrieval of data, which data may be used for comparisons." Adrain's construction is proper because, unlike Defendants' construction, it acknowledges that multiple types of data can be stored in the reference memory.

### D.  Reference Image Data

The defendants pose the question "[i]f, as Plaintiff suggests, 'reference image data' is distinct from 'image data,' what data comprises the 'image data from the reference memory?'" (Doc. 77 at 22). The defendants also assert that there "is not a single statement in the patent to shed light on any meaning for the term 'reference image data.'" This is simply incorrect. (Doc. 77, at 22). The meaning of the phrase can easily be gleaned from the context of the specification. For example, the specification discloses the use of the reference memory to store image data: "[t]he reference memory can be divided into sections for storing different types of data. The reference memory can include an archive section in which baseline *image data* are stored." (A0005, 3:61-64) (emphasis added). <u>The reference memory "stores license plate numbers for stolen cars</u>." (A0005, 4:65-66) (emphasis added). The specification also makes it clear that the data that is stored in the reference memory is used for comparisons: "A comparator 22 receives data from the interpreter 16 and reference memory 20 and compares these data according to comparison criteria." (A0005, 3:35-37). The specification also elaborates that "image data from the interpreter and the reference memory are compared by the comparator 22 according to the comparison criteria to determine correlation of the images." (A0005, 4:20-22).

These disclosures make it quite clear that the reference memory is data used for comparisons, and can include license plate numbers or other types of data, as Plaintiff would construe the term. The Court should reject the Defendants' construction.

### E. Interpreter

In another litigation-induced attempt to import limitations into the claim language, the defendants cherry pick certain statements from the specification that they argue indicates that the interpreter is "described/defined" using "image data" or "images." (Doc. 77 at 23). The defendants ignore, however, other situations where the interpreter is "described/defined" *without* using the word "image." For example, at column 3, lines 33-35, the specification states "[a] reference memory 20 receives *data* from the interpreter 16 according to storage criteria input to the interpreter by the programmer." (A0005, 3:33-35) (emphasis added). The term "image" does not appear in connection with "interpreter" here.

The defendants provide no explanation for why the Court should also add the "digital" limitation into the construction for "interpreter." The claims and specification do not provide any basis for adding such a limitation here. Further, the defendants provide no support or explanation for their statement that "Plaintiff's admissions in the Reexamination proceeding" mean that the defendants' construction of this phrase is proper. Rather, Plaintiff's construction of "interpreter" is supported by the specification and is proper.

### F. Comparator

Defendants assert that a "pixel-to-pixel" comparison is mandated by the specification, such as by the statement "Analysis is limited to consistently sized characters within a specified boundary, that is the rectangular shape of the license plate. When the object 32 meets the analysis criteria of a license plate, the number is compared to the numbers in reference memory." (Doc. 77 at 24, quoting

5:1-6). Defendants are incorrect. This statement does *not* indicate that a pixel-to-pixel comparison is required. The defendants' quoted sections of the '669 patent do not reference a pixel-to-pixel comparison. Defendants' rhetoric regarding how consistently sized characters would be determined or how rectangular shapes would be determined are red herrings. This disclosure in the specification simply means that the system extracts license plate numbers from images. Even if the quoted sections of the '669 patent did describe pixel-to-pixel comparisons, other sections of the specification describe the comparison of data not using pixels. For example, at 3:35-37, the specification states "The comparator 22 receives data from the interpreter 16 and reference memory 20 and compares these data." (A0005). No mention is made of pixel-to-pixel comparisons. A requirement that the comparator perform pixel-to-pixel comparisons would exclude this embodiment of the '669 patent. Accordingly, the Defendants' construction of "comparator," which would require pixel-to-pixel comparisons, is incorrect.

### G. Monitoring System

The defendants' prose that "Plaintiff's definition of 'monitoring system' is so broad that a night watchman with a whistle and clipboard could fall under their construction" is incorrect and irrelevant. Perhaps if "monitoring system" is taken completely out of context, or if Claim 1 ended at the words "monitoring system," the defendants' statement here might have some marginal relevance, but here it does not. However, Claim 1 contains a number of limitations following the *preamble* "monitoring system" that define the scope of the claim. It is black letter law that a person skilled in the art is "deemed to read the claim term <u>not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent</u>, including the specification." *Philips v. AWH Corporation*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (emphasis added); *see also Gen. Foods*

*Corp. v. Studiengesellschaft Kohle mbH*, 972 F.2d 1272, 1274 (Fed. Cir. 1992) ("each claim is an entity that must be considered as a whole.")

In view of the additional language in claim 1 following "a monitoring system," the defendants' attempt to shoehorn every single limitation of claim 1 into the construction for "monitoring system" is obviously inappropriate. Such a construction would be completely redundant and simply incorrect. If monitoring system were to have defendants' verbose construction, then every single word in claim 1 after "monitoring system" would be superfluous, and the patentee here would not have needed to choose those words.

Accordingly, Defendants' construction of "monitoring system" is incorrect. The Court should reject Defendants' construction and adopt Adrain's more concise and accurate construction for this phrase.

### H. Movably Mounted

Defendants' arguments based on the '669 patent's prosecution history regarding the phrase "movably mounted" ignore statements made by Adrain during the prosecution of the '669 patent. Adrain cited these statements in his opening claim construction brief – in a response to an office action before the PTO – Adrain stated "*As the space being monitored changes*, the interpreter selects certain parts of the image for comparison and disregards other parts of the image." (A077, April 14, 1997 Response to Office Action, p.5) (emphasis added). This statement indicates that the support on which the camera is mounted can be moved. Defendants' conveniently ignore this fact. (Doc. 77 at 26). Further, Defendants ignore that the specification specifically discloses that "the camera 12 can be mounted on a mobile support, such as a vehicle 30. The space 14 and objects 32 being monitored change according to movement of the vehicle 30. For example, the camera can be mounted on a police car." (A0005, 4:50-65).

Defendants' construction is flawed, as it ignores the relevant portions of the prosecution history and the specification. Adrain's construction, on the other hand comports with the intrinsic evidence of the '669 patent. The Court should adopt Adrain's construction.

### I. Output Interface[1]

Defendants state a "belief" that "Plaintiff is trying to capture the definition of 'output device' instead of 'output interface.'" (Doc. 77 at 27). The defendants' belief is irrelevant, and Defendants' statement is merely an attempt to mislead the Court. To be clear – Plaintiff's construction for "output *interface*" is "hardware that advises a user of the results of comparisons."

Contrary to Defendants' assertion that "neither hardware nor software is supported by the intrinsic evidence," Plaintiff's construction is amply supported by the specification. As noted in Adrain's opening claim construction brief, several examples of output interfaces are given in the specification, including "an alarm panel, a memory interface, or a video monitor interface." (A005, 3:42-44). The output interface is "preferably… integrated in a microcomputer and associated software." (A005, 3:49-51). Defendants assertion that these examples do not include hardware or software is irrelevant. Further, Defendants' statements regarding the definition of interface being software are without merit. Adrain provided in his opening claim construction brief a piece of extrinsic evidence – the MICROSOFT COMPUTER DICTIONARY – that defines "interface" as "[s]oftware that enables a program to work with the user…with another program…or with the computer's hardware." (Doc. 75 at 24). The defendants have failed to explain why Plaintiff's construction is "logically inconsistent." (Doc. 77 at 27). Defendants statements here amount to little more than

---

1 In Adrain's opening claim construction brief, Plaintiff inadvertently stated that Defendants did not offer a construction for this phrase. As Defendants did, in fact, provide a construction for this phrase, Plaintiff retracts its prior statement regarding same (Doc. 75 at 23), and apologizes to the Court for any confusion.

**JOHN B. ADRAIN'S REPLY CLAIM CONSTRUCTION BRIEF PURSUANT TO P.R. 4-5(c)** 9

attorney argument without support and should be disregarded. Rather, the Court should adopt Plaintiff's construction of "output interface."

### J. Record Memory

The defendants acknowledge that the phrase "record memory" is capable of being construed – they have provided a construction for same. (Doc. 77 at 28). Indeed, the Defendants cite to several portions of the specification that discuss the record memory. Despite these references to the specification, the Defendants contend that there is still somehow a lack of clarity in claim 8. *Id*. However, as Adrain noted in his opening claim construction brief, "the failure to provide explicit antecedent basis for terms does not always render a claim indefinite." *Bose Corp. v. JBL, Inc.*, 274 F.3d 1354 (Fed. Cir. 2001) (quoting MPEP § 2173.05(e) (6th ed. Rev. 1, Sept. 1995)). The lack of an antecedent basis for the "record memory" here is not fatal to claim 8, as the phrase "record memory" can clearly be construed. "Record memory" means "hardware that contains data."

Defendants again complain that the term "hardware" does not appear in the specification of the '669 patent. However, under the plain meaning of the word "memory," it is clear that memory is hardware. Further, Adrain has offered extrinsic evidence that supports this construction. The defendants have not attempted to argue otherwise.

Accordingly, in view of the above, the Court should reject Defendants' arguments, and should adopt Adrain's construction for "record memory."

### IV. CONCLUSION

For the foregoing reasons and evidence, including the reasons in Adrain's Opening Claim Construction Brief and supported evidence, Adrain's constructions should be adopted.

                                                   Respectfully submitted,

Dated: March 6, 2012                  By:   /s/ John T. Polasek
                                                    John T. Polasek
                                                    Texas Bar. No. 16088590
                                                    tpolasek@pqelaw.com
                                                    C. Dale Quisenberry
                                                    Texas Bar No. 24005040
                                                    dquisenberry@pqelaw.com
                                                    Jeffrey S. David
                                                    Texas Bar No. 24053171
                                                    jdavid@pqelaw.com
                                                    POLASEK, QUISENBERRY & ERRINGTON, L.L.P.
                                                    6750 West Loop South, Suite 920
                                                    Bellaire, Texas 77401
                                                    Telephone: (832) 778-6000
                                                    Facsimile: (832) 778-6010

                                                    S. Calvin Capshaw
                                                    State Bar No. 03783900
                                                    ccapshaw@mailbmc.com
                                                    Elizabeth L. DeRieux
                                                    State Bar No. 05770585
                                                    ederieux@mailbmc.com
                                                    Capshaw DeRieux, LLP
                                                    114 East Commerce Avenue
                                                    Gladewater, Texas  75647
                                                    Telephone: (903) 236-9800
                                                    Facsimile: (903) 236-8787

                                                   *Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served this 6th day of March, 2012, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by, electronic mail, facsimile transmission and/or first class mail on this same date.

                               /s/   John T. Polasek